## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Lexion Medical, LLC,

|                  |                              |
|------------------|------------------------------|
| Plaintiff,       | Civ. No. 13-2453 (RHK/FLN)   |
|                  | **MEMORANDUM OPINION**       |
|                  | **AND ORDER**                |
| v.               |                              |
| SurgiQuest, Inc.,|                              |
| Defendant.       |                              |

---

Peter J. Gleekel, Larson King, LLP, Minneapolis, Minnesota, for Plaintiff.

Anthony Joseph Viola, Andrew K. Cizmarik, Edwards Wildman Palmer LLP, New York, New York, Scott David Wofsy, Edwards Wildman Palmer LLP, Stamford, Connecticut, Michael D. Reif, Becky R. Thorson, Ronald J. Schutz, Robins Kaplan Miller & Ciresi LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiff Lexion Medical, LLC ("Lexion") and Defendant SurgiQuest, Inc.

("SurgiQuest") manufacture and sell insufflation devices used in laparoscopic surgery.[1]

Lexion commenced the instant action against SurgiQuest in September 2013, alleging

that SurgiQuest had made false representations while advertising and marketing its

insufflation device.  Presently before the Court is SurgiQuest's Motion to Dismiss for

lack of personal jurisdiction or, in the alternative, for partial dismissal for failure to state

---

[1] Laparoscopic surgery involves several small incisions in the patient rather than one large one. A tube-like device ("trochar") is inserted into an incision, through which special instruments and a camera are passed to perform the procedure.  In order to provide the surgeon with working space and visibility, the area being operated upon is inflated with gas, usually carbon dioxide, in a process called insufflation.  See http://www.fascrs.org/patients/treatments_and_screenings/ laparoscopic_surgery/ (last visited March 24, 2014).

a claim.  For the reasons that follow, the Motion will be granted in part and this action

dismissed without prejudice for lack of personal jurisdiction.

## BACKGROUND

### I.    The parties and their devices

Lexion is a Delaware company headquartered in St. Paul, Minnesota.  (Am.

Compl. ¶ 1.)  It manufactures and sells the "Insuflow" device used in laparoscopic

surgery, which it sells to surgeons and hospitals throughout the United States, including

in Minnesota.  (Id. ¶¶ 5, 9.)  The device employs a one-way valve to prevent insufflation

gas from escaping during surgery.  But the gas leaks when, for example, instruments are

passed through the valve, and hence more and more carbon dioxide, which is both cold

and dry, must be pumped into the patient during a procedure.  (Dugan Decl. ¶ 3.)

Lexion's device warms and humidifies this gas as it enters the surgical cavity, which it

claims is "scientifically proven to be the only method for reducing the side effects" of gas

use during laparoscopic surgery.  (Am. Compl. ¶ 8.)

SurgiQuest is a Delaware corporation headquartered in Connecticut.  (Id. ¶ 2.)  It

manufactures and sells the "AirSeal" device used in laparoscopic surgery, which works

differently than Lexion's Insuflow device.  (Id. ¶ 11.)  SurgiQuest's device is valveless

and utilizes "a horizontal air barrier" to prevent insufflation gas from escaping.  (Dugan

Decl. ¶ 5.)  As a result, it "constantly re-circulates and filters the original [insufflation]

gas, without the need to introduce large amounts of additional gas."  (Id.)  Heating and

humidifying is not required when using the AirSeal device, according to SurgiQuest,

because the device "does not cause meaningful cooling or drying of the [surgical]

-2-

environment," as it does not permit insufflation gas to escape and, hence, additional cold, dry gas need not be pumped into the patient. (Id. ¶¶ 3, 5.)

## II.    The instant litigation

Lexion commenced this action against SurgiQuest on September 6, 2013. It alleges that SurgiQuest's marketing materials "falsely state its AirSeal [device] is capable of reducing the side effects linked to the use of unconditioned insufflation gas" and that "it is unnecessary to warm and humidify the insufflation gas to reduce side effects." (Am. Compl. ¶¶ 13-14.) It further alleges that SurgiQuest's employees repeated these "misrepresentations" in sales meetings held throughout the United States, including in Minnesota. (Id. ¶¶ 15-16.) And it claims that due to these "misrepresentations," doctors and others were influenced to purchase the AirSeal device, which has caused it (Lexion) to lose sales to prospective customers. (Id. ¶¶ 18-21.) This conduct, according to Lexion, constituted false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and deceptive and unlawful trade practices under Minnesota law.

## III.    SurgiQuest's Minnesota contacts

SurgiQuest has no physical presence in Minnesota. (Dugan Decl. ¶ 8.) It owns no property here, has no offices here, and does not manufacture products here. (Id.) It is not registered to do business in Minnesota and has never been subject to Minnesota income taxes. (Id. ¶ 7.) It does not direct, and has never directed, any advertisements of any kind regarding its AirSeal device or any other product to Minnesota. (Id. ¶¶ 9, 12.) Instead, SurgiQuest's Minnesota contacts are primarily limited to the following:

*First*, in 2012, surgeons at Mercy Hospital ("Mercy") in Coon Rapids, Minnesota, heard about the AirSeal device and wanted to learn more about it.  (Dooher Decl. ¶ 3.) Mercy set up a meeting in Minnesota with two SurgiQuest employees, who provided additional information about the device.  Mercy then obtained an AirSeal device and evaluated it in surgeries in October and November 2012.  That eventually led Mercy to decide to purchase the device in March 2013, at a cost of approximately $25,000.  (Id. ¶¶ 4-5; Dugan Decl. ¶ 16.)  This constitutes the only AirSeal device SurgiQuest has sold in Minnesota.  (Dugan Decl. ¶ 14.)  *Second*, the AirSeal device uses "consumables," such as filters and other disposable items, which must be replaced regularly.  Mercy has sent more than 80 purchase orders to SurgiQuest for such items, often more than once per week, for total sales of nearly $60,000 since it began using the AirSeal device.  (Gleekel Decl. Ex. 3.)  *Third*, one of SurgiQuest's employees lives in Minnesota, although he works out of an office in Connecticut; as a result, SurgiQuest pays unemployment taxes to the state of Minnesota.  (Dugan Decl. ¶ 7.)

## IV.   The present Motion

SurgiQuest moved to dismiss this case in October 2013, arguing that personal jurisdiction is lacking in Minnesota.  Lexion responded with an Amended Complaint amplifying its allegations and citing the sale to Mercy, of which it learned via early discovery, as a Minnesota contact.  SurgiQuest now moves to dismiss the Amended Complaint for lack of personal jurisdiction or, alternatively, to dismiss Lexion's state-law causes of action for failure to state a claim.  The Motion has been fully briefed, the Court heard argument on March 11, 2014, and the Motion is ripe for disposition.

**STANDARD OF REVIEW**[2]

In order to survive SurgiQuest's Motion, Lexion must make only a prima facie

showing of jurisdiction.  E.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th

Cir. 2003).  This requires it to proffer "sufficient facts . . . to support a reasonable

inference that [SurgiQuest] can be subjected to jurisdiction within [Minnesota]."  Dairy

Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir. 2012)

(citations omitted).  Because SurgiQuest controverts the existence of jurisdiction,

Lexion's showing "must be tested[] not by the pleadings alone, but by the affidavits and

exhibits presented with the motion[] and in opposition thereto."  Id. (citations omitted).

And where, as here, the Court does not hold an evidentiary hearing, it must "look at the

facts in the light most favorable to the nonmoving party, and resolve all factual conflicts

in favor of that party."  Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir.

2011) (citation omitted).

**ANALYSIS**

To establish a prima facie case of personal jurisdiction, Lexion must show that

Minnesota's long-arm statute has been satisfied and that exercising jurisdiction would

comport with the Due Process Clause of the Fourteenth Amendment.[3]  E.g., Guinness

Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998); Minn. Mining

---

[2] Because the Court finds personal jurisdiction over SurgiQuest lacking, it need not (and does not) reach SurgiQuest's alternative arguments for dismissal of the state-law claims.  Hence, only the standard applicable to a motion to dismiss for lack of personal jurisdiction is recited here.

[3] For a cogent explanation why the Fourteenth Amendment, rather than the Fifth Amendment, applies in this federal-question case (through the back door of Federal Rule of Civil Procedure 4(k)), see Wallace v. Mathias, 864 F. Supp. 2d 826, 832-34 (D. Neb. 2012).

& Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696-97 (8th Cir. 1995).  These

two inquiries collapse into one, however, because Minnesota's long-arm statute extends

jurisdiction to the outer limits of the Due Process Clause.  E.g., Guinness, 153 F.3d at

614; Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991).

　　　Due process requires that SurgiQuest have sufficient "minimum contacts with

[Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'"  Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 754

(2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "The central

question" is whether it "has purposefully availed itself of the privilege of conducting

activities in [Minnesota] and should, therefore, reasonably anticipate being haled into

court [here]."  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003)

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The Eighth Circuit

has instructed district courts to consider five factors in answering this "central question":

(1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of

those contacts; (3) the relation of the cause of action to the contacts;[4] (4) the forum state's

interest in providing a forum for the plaintiff; and (5) the convenience of the parties.  Id.

The first three factors are of primary importance, while the last two factors are considered

secondary.  Id.

---

[4] This third factor distinguishes "specific" jurisdiction from "general" jurisdiction.  Specific
jurisdiction exists in causes of action that arise out of a defendant's contacts with the forum state.
Daimler AG, 134 S. Ct. at 754.  General jurisdiction, by contrast reaches *any* cause of action
against a defendant with "continuous and systematic" forum contacts.  Id. (citation omitted).

## I.      Lexion has not established general jurisdiction.

Lexion first argues that SurgiQuest's contacts with Minnesota are so continuous and systematic as to justify the exercise of general jurisdiction. (<u>See</u> Mem. in Opp'n at 9-10.) The Court does not agree.[5]

In support of its argument, Lexion hones in on the "ongoing, multiyear relationship" between Mercy, a Minnesota hospital, and SurgiQuest. (<u>Id.</u> at 9.)[6] It contends that this relationship, in which SurgiQuest has repeatedly supplied consumables to Mercy for use in its AirSeal device, "is precisely the type of systematic and continuous contact that . . . supports the exercise of [general] jurisdiction." (<u>Id.</u> at 12.) But as the Supreme Court has emphasized several times in recent years, general jurisdiction over an out-of-state corporation requires such sizeable and "continuous corporate operations within a state" so as to "render [it] essentially at home in [that] State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, __ U.S. __, 131 S. Ct. 2846, 2851, 2853 (2011); <u>accord Daimler AG</u>, 134 S. Ct. at 751. "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation is the location of its principal place of business – its "home." <u>Goodyear</u>, 131 S. Ct. at 2853-54.

Here, the record simply does not support the conclusion that Minnesota may be fairly characterized as SurgiQuest's "home." Though it has repeatedly transacted

---

[5] Notably, while Lexion raised general jurisdiction in its brief, at the hearing it focused on specific jurisdiction.

[6] Lexion overplays this contact, noting that Mercy is "part of Allina Health System ('Allina'), a Minnesota company with 13 hospitals in Minnesota." (Mem. in Opp'n at 2; <u>accord, e.g.</u>, <u>id.</u> at 4-5 (pointing out that Allina has "one hundred eighty-two clinics and twelve urgent care facilities" in the state).) But there is no indication SurgiQuest has attempted to market or sell its device to any Allina facility besides Mercy.

business with Mercy, a corporation's "continuous activity of some sorts within a state" will not suffice, and neither will repeated purchases, "even if occurring at regular intervals." Id. at 2856 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1984)); accord S.B. Schmidt Paper Co. v. A to Z Paper Co., 452 N.W.2d 485, 487 (Minn. Ct. App. 1990) (long-arm jurisdiction "should not be such that anyone who deals with a Minnesota resident in any way . . . can be brought into the Minnesota courts to respond to a suit"). Nor is the calculus changed by the fact that a smattering of other connections exist between Minnesota and SurgiQuest, such as one employee residing here or employees having traveled here in connection with the sale to Mercy. Helicopteros is instructive in this regard. There, the Supreme Court held that a Texas court could not assert general jurisdiction over the Colombian owner of a helicopter that crashed in Peru, even though the owner had sent its CEO to Texas for contract negotiations, repeatedly purchased helicopters, equipment, and training services from a Texas-based company for substantial sums, and sent personnel to Texas for training. 466 U.S. at 416. There is no principled reason to reach a different conclusion here.

## II.    Lexion has not established specific jurisdiction.

Lexion next argues that the Court may exercise specific jurisdiction over SurgiQuest. In support, it again focuses on SurgiQuest's lone sale in this state, noting that SurgiQuest has sent marketing materials and made sales calls to, engaged in repeated sales (of consumables) to, and regularly communicated with, Mercy. (Mem. in Opp'n at 10-16.) And it contends that its claims – alleging SurgiQuest "has committed false advertising and misrepresentation in conjunction with the sale of its AirSeal System" –

arise out of these Minnesota contacts.  (Id. at 20-21 (arguing that documents produced by Allina "have already yielded marketing material containing precisely the misrepresentations that form the basis of this action").)

But Lexion overlooks that some of these purported Minnesota contacts are in fact unrelated to this litigation.  For example, it harps on Mercy's repeated purchases of consumables from SurgiQuest, yet nothing before the Court suggests those purchases involved (alleged) misrepresentations regarding the AirSeal device.  Moreover, Lexion pays no heed to the fact that *Mercy* initiated contact with SurgiQuest, rather than the other way around.  (See Dooher Decl. ¶ 3 ("[S]everal surgeons at Mercy had heard about [the] AirSeal system and were interested in learning more.  *Mercy* [then] set up a meeting with two SurgiQuest representatives.") (emphasis added).)  Minnesota courts have recognized that a "crucial factor in determining whether the defendant availed itself of jurisdiction is the nonresident defendant's effort to initiate or induce the transaction." Viracon, Inc. v. J&L Curtain Wall LLC, 929 F. Supp. 2d 878, 884 (D. Minn. 2013) (Kyle, J.) (quotation marks and citation omitted).

Regardless, Lexion's argument misapprehends the specific-jurisdiction inquiry. As the Supreme Court emphasized just last month, the analysis must "look[] to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there."  Walden v. Fiore, __ U.S. __, 134 S. Ct. 1115, 1122 (2014) (emphasis added); accord id. at 1124 (courts must not "shift[] the analytical focus from [the defendant's] contacts with *the forum* to [its] contacts with" forum *residents*) (emphasis added).  A defendant's "relationship with a . . . third party" in the forum state, such as

Mercy here, "is an insufficient basis for jurisdiction." Id. at 1123; accord, e.g., id. ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (internal quotation marks and citation omitted).

Viewed in the context of the allegations in the Amended Complaint, Lexion must show something more than the sale of a lone device by SurgiQuest to a single Minnesota entity – even one that contemplated a continuing relationship through purchases of consumables. See id. at 1122 (noting that specific jurisdiction requires a contractual relationship that "envisioned continuing *and wide-range contacts* in the forum State") (emphasis added). Rather, Lexion must show SurgiQuest "purposefully reached . . . into" Minnesota to "exploit" the market here. Id. It has failed to meet that standard. As noted above, SurgiQuest does not direct, and has never directed, advertisements of any kind regarding its AirSeal device or any other product to Minnesota.[7] It has only sold one

_____

[7] Lexion asserts SurgiQuest "has directed marketing materials and made sales calls" to two Minnesota hospitals besides Mercy. (Mem. in Opp'n at 13.) Support for that assertion ostensibly comes from the Declaration of SurgiQuest's President. But the Declaration provides only that two hospitals "*asked* for information about" SurgiQuest's products (Dugan Decl. ¶ 14 (emphasis added)) – it says nothing about whether SurgiQuest provided responsive information, and Lexion's counsel confirmed at oral argument that it simply *assumed* SurgiQuest had done so. See Coen v. Coen, 509 F.3d 900, 904 (8th Cir. 2007) ("If jurisdiction is controverted, the plaintiff has the burden of *proving facts* supporting personal jurisdiction.") (emphasis added). In any event, providing marketing materials to Minnesota hospitals on a handful of occasions falls well short of the "purposeful availment" necessary to establish specific jurisdiction. See, e.g., Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., 872 F. Supp. 2d 838, 847 (D. Minn. 2012) (Ericksen, J.) ("The mere making of statements to a resident of a forum state is not the same as directing activity toward the forum state."); Zumbro, Inc. v. Cal. Natural Prods., 861 F. Supp. 773, 776 (D. Minn. 1994) (Kyle, J.) (no personal jurisdiction over defendant despite sending literature to Minnesota and meeting with Minnesota sales prospects).

AirSeal device in this state, a sale that transpired only because *Mercy* reached out to *SurgiQuest*. There simply has been no showing that SurgiQuest "purposefully directed" its activities toward Minnesota; rather, the nature, quality, and quantity of its contacts here are both limited and attenuated. Accordingly, it is not subject to specific jurisdiction.

### III.   Jurisdictional discovery is unwarranted.

Finally, Lexion requests that the Court permit jurisdictional discovery if the present record does not suffice to deny SurgiQuest's Motion. (Mem. in Opp'n at 23-24.) But in the Court's view, jurisdictional discovery would be inappropriate for two reasons. First, this is not a case in which the plaintiff has been afforded no opportunity to explore the defendant's forum contacts. Lexion already has obtained discovery regarding SurgiQuest's dealings with Mercy, SurgiQuest has denied other sales or marketing to Minnesota, and Lexion has not offered any compelling argument why SurgiQuest's denial is suspect. See, e.g., Vetta-Zelo, Inc. v. Ideum, Inc., Civ. No. 13-367, 2013 WL 3177804, at *9 (D. Minn. June 24, 2013) (Davis, C.J., adopting Report & Recommendation of Keyes, M.J.) (denying jurisdictional discovery where defendant "provided a sworn affidavit showing what appears to be the entirety of any potential relevant contacts with Minnesota[,] [a]nd [plaintiff] has not provided any reason why the Court should view the affidavit as incorrect or incomplete"). Second, Lexion offers only its "belief" that additional contacts "might be discovered" through jurisdictional discovery. (Mem. in Opp'n at 23.) "[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in

denying jurisdictional discovery." <u>Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG</u>, 646 F.3d 589, 598 (8th Cir. 2011) (citation omitted).

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that SurgiQuest's Motion to Dismiss (Doc. No. 31) is **GRANTED IN PART**, and this action is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  March 26, 2014                    s/Richard H. Kyle
                                         RICHARD H. KYLE
                                         United States District Judge